# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | Case No. 3:22-cr-78 |
| v. ) | |
| ) | Judge Eli Richardson |
| ROBIN SMITH, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD VARIANCE

Defendant Robin Smith, through counsel, respectfully requests that the Court sentence her to a punishment that is sufficient, but not greater than necessary, to accomplish the goals of sentencing. Pursuant to Paragraph 18 of the Plea Agreement, the parties agree that Robin Smith is free to recommend whatever sentence she deems appropriate. Ms. Smith is a first-time offender who devoted her life to service of her community and fellow citizens prior to and since committing the crime that led to her conviction. That said, Ms. Smith recognizes the severity of the crimes she committed and takes full responsibility for her actions. Ms. Smith agreed to an Order of Forfeiture in the amount of $28,263, and she has already satisfied that judgment. D.E. 34. Additionally, Ms. Smith voluntarily resigned her position in the Tennessee House of Representatives, despite the government not seeking that requirement, and has worked to cooperate in the prosecution of her co-conspirators since first understanding the nature of the crime she committed.

In light of these circumstances, Ms. Smith respectfully requests that the Court impose a downward variance and sentence her to not more than one year of probation with no period of home detention, with no special conditions, and no fine.

## I. FACTUAL BACKGROUND

The search warrant in this case was executed on Ms. Smith's house on January 8, 2021. Ms. Smith retained criminal counsel immediately after that date and quickly began working to understand the nature of the offense for which she was being investigated. Once Ms. Smith understood and appreciated the criminal nature of her conduct, she immediately began cooperating with the government to bring the matter to a conclusion. After first meeting with the government for a proffer session in August 2021, Ms. Smith pleaded guilty to an information, charging her with a single count of honest services wire fraud in violation of 18 U.S.C. §§ 1342 and 1346 on March 8, 2022. *See* D.E. 15. Ms. Smith's co-conspirators, Glen Casada and Cade Cothren, were indicted in 3:22-CR-282 in a 20-count indictment on August 22, 2022. In the late summer of 2024, it came to Ms. Smith's attention that the government had inadvertently produced unfiltered images of Ms. Smith's devices to her co-conspirators. Case No. 3:22-CR-282, D.E. 160. Ms. Smith was forced to move to intervene in 3:22-CR-282, D.E. 158, and in order to rectify the issue, the trial of Defendants Casada and Cothren ultimately was continued over five additional months, to April 22, 2025, over three years after Ms. Smith pleaded guilty. Case No. 3:22-CR-282, D.E. 222.

After presiding over the trial of Ms. Smith's co-conspirators, including the testimony of Ms. Smith over the course of three trial days, as well as a fourth day on which she was required to appear for recross examination but was not ultimately questioned, the Court is well aware of and familiar with the criminal conduct at issue here, as well as Ms. Smith's role in it. In Ms. Smith's plea agreement, she agreed to the entry of a forfeiture order in the amount of $28,263.26. D.E. 33. Ms. Smith paid that amount and satisfied that judgment in September 2025. D.E. 34. The parties agreed that the base offense level for Ms. Smith's conduct is 14,

pursuant to U.S.S.G. § 2C1.1(a)(1), and that the parties would be free to recommend to the Court whatever sentence they feel appropriate.

Ms. Smith's sentencing hearing is set for October 24, 2025, at 9:00 a.m. D.E. 31.

## II. ANALYSIS

In *United States v. Booker*, 125 S.Ct. 738, 757 (2005), the U.S. Supreme Court held that the U.S. Sentencing Guidelines are merely advisory as the mandatory guideline system under the Sentencing Reform Act of 1984 was unconstitutional. As such, the Court considers the calculated guideline range as one of many factors to determine a sentence that is no greater than necessary to achieve the goals of sentencing set forth in 18 U.S.C. § 3553(a)(2). *See Kimbrough v. United States*, 128 S.Ct. 558, 570 (2007); *Gall v. United States*, 128 S.Ct. 586, 597 n.6 (2007). Under 18 U.S.C. § 3553(a), the Court must consider the following seven factors: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant," (2) the need for the sentence to reflect the seriousness of the offense, promote respect, provide a just punishment, adequately deter criminal conduct, protect the public, and provide the defendant with certain training, care, and treatment in the most effective manner, (3) "the kinds of sentences available," (4) "the kinds of sentence and the sentencing range established" by the U.S. Sentencing Guidelines, (5) "any pertinent policy statement…issued by the Sentencing Commission," (6) "the need to avoid unwarranted sentence disparities," and (7) "the need to provide restitution to any victims of the offense."

Based on these factors, the Court should impose a downward variance sentence of one year of probation, with no special conditions, and no fine.

### A. The Sentencing Range, Types of Sentencing Available, and Pertinent Policy Statements

Ms. Smith agrees that, based on the Court's rulings during the sentencing hearings of Cade Cothren and Glen Casada, the Presentence Investigation Report (the "PSR") correctly calculated the sentencing guideline range in this case and requests that the Court impose a downward variance given the circumstances of this case. As the PSR notes, the applicable guideline range, prior to the application of a downward departure for substantial assistance under § 5K1.1, is 37 to 46 months' imprisonment. PSR at 129. Ms. Smith is a Zero-Point Offender with absolutely no criminal history, and she has already reached 62 years of age without an arrest. For the reasons set forth in this memorandum, a downward variance to one year probation without any period of home detention is appropriate in this case to achieve justice.

### B. Nature and Circumstances of the Offense

The Court is quite familiar with the facts and circumstances surrounding the conspiracy Ms. Smith entered into with Mr. Casada and Mr. Cothren, and the Court additionally heard Ms. Smith testify over the course of nearly three full days during their trial in the late spring of this year. Ms. Smith, together with Mr. Cothren and Mr. Casada, entered into a conspiracy to defraud the State of Tennessee as it related to the postage and printing program via the company they created, which was called Phoenix Solutions. Throughout the duration of that conspiracy, the co-conspirators obtained total funds related to the mailer program in the amount of $51,947. Certainly, honest services wire fraud is a serious offense, and Ms. Smith, as an elected public official whose reputation was still intact, was an important and active participant in the conspiracy to engage in that fraud. Ms. Smith testified to her role in the conspiracy with her co-conspirators as follows:

Q. So what did you actually do as far as furthering the business of Phoenix Solutions?

A. Well, early on, again, it was to bring my Rivers Edge Alliance clients to bear and use Phoenix Solutions as the consulting firm. But in reality, there was much more because since the scandal had happened and there were some kind of fall-out, as it were, around the personalities of Mr. Cothren and Mr. Casada because we're having to hide their identities, I was the only individual that could interact with Ms. Ridley. And if there was a delay in payment, it was my job to put pressure on her to speed that on up so that we could get the projects put in the mail and delivered. It was my job to keep the narrative alive about what this company did and didn't do and who was behind it and who wasn't behind it. And so all these things were part of, you know, my agreement, unfortunately, to -- and part of this crime, that we were involved in hiding their identities and accessing the moneys of the State of Tennessee.

Trial Tr. Vol. 5 179: 3-23, April 28, 2025. That said, as the Court found in the sentencings of Ms. Smith's co-conspirators, there was no real financial loss to the State of Tennessee in this matter, and the work undertaken by Phoenix Solutions was of a high quality. This was not a "no-show job" with invoices paid for work that was not completed.

As to Ms. Smith's motivation for having entered into the conspiracy, she testified under oath at trial that she was "trying to encourage two men that had gone through a lot of public scrutiny and was just trying to be a friend beyond the titles and beyond anything else[.]" Trial Tr. Vol. 5 146:3-6, April 28, 2025. She testified further on cross examination that she was attempting to assist Mr. Cothren, who was her friend, with getting his career back on track and agreed that "everything [she] did was out of care and concern for [him]." Trial Tr. Vol. 6 244:23 – 246:7, April 29, 2025. She additionally agreed that she was not trying to involve Mr. Cothren in a "criminal enterprise," further elaborating that:

A. As I've told in my earlier testimony –

Q. Yes.

A. -- you know, it wasn't until in 2021 that I understood what the definition of dishonest services was. So throughout all of that, no, my intention was not to

commit a crime. And based on your earlier statement, which it should kind of haunt all of us that there are some lies that are crimes and some lies that aren't. In politics --

Q. Let's just – let's -- stick with me. Stick with me.

A. I'm sticking with you, but I'm offering an answer to your question. We were lying to politicians. And we didn't find that that was a problem. And so, you know, I was not -- no, I wasn't intending to be involved in any sort of a criminal enterprise, but –

Q. All right.

A. -- lie after lie mounted up.

Trial Tr. Vol. 6 245:13-246:5, April 29, 2025. Ms. Smith then testified clearly that, while acting unethically at the time, she did not intend to harm anyone, to steal from anyone, to harm her friends and fellow legislatures, to harm the State of Tennessee, to harm her constituents, or to harm her family. Trial Tr. Vol. 6 246:19-247:14, April 29, 2025. Despite her intention, Ms. Smith was aware that she was being dishonest in her actions and using her position to apply pressure on employees of the State, and she is now well aware that her actions, in addition to having been unethical, were also criminal.

    Ms. Smith also elaborated on how and when she made the decision to cooperate and accept responsibility: "And once I understood completely that the actions that I was taking, the lies that I were telling were breaking the law and understood the charge of dishonest services, I immediately wanted to meet with the FBI and enter into a plea agreement." Trial Tr. Vol. 5 135:7-13, April 28, 2025. She then testified: "My first engagement with the US government to admit that I committed a crime was in August of 2021 taking full responsibility after I learned what the definition of dishonest services was." Trial Tr. Vol. 6 180:13-20, April 29, 2025. After clarifying that she did not understand the law in this area prior to the search warrant was executed and she had consulted with counsel, Ms. Smith stated that, once she understood the nature of the crime and how her

actions fit within it, "[Deciding to plead guilty] wasn't easy, but it didn't take long once I understood how the law was defined and the fact that we had committed crimes." Trial Tr. Vol. 6 182:20-183:9. April 29, 2025. As such, she went in for her first proffer on August 5, 2021, less than seven months after the search warrant was executed, and she testified that, at that time, she "was ready to take full responsibility and was hoping that all parties involved would do the same." Trial Tr. Vol. 6 186:17-19, April 29, 2025.[1]

As a part of her acceptance of responsibility, Ms. Smith agreed to pay $28,263.26 pursuant to the entry of an Order of Forfeiture, D.E. 33, and she has already done so, D.E. 34. Thus, while Ms. Smith did not understand the criminal nature of her actions while she was undertaking them, the offenses Ms. Smith committed were unquestionably serious and, since learning the full nature of those offenses, she has taken full responsibility and accountability for over four years and has done all that she can to remedy the wrongs that she has committed. In her own words, when asked why she pleaded guilty, Ms. Smith testified as follows:

> A. I pled guilty to the crime of dishonest services because everything we did to conceal the identity of Cade Cothren and Glen Casada, created a fake company, and that fake company denied the right of an authentic company to services to be awarded by the State and for other State representatives to be involved. And so I pled guilty, just like I said yesterday, because I first confessed to my pastor because I had to make sure that God could forgive me, and my family. And now I'm confessing to you because I want to make this right.

Trial Tr. Vol. 6 211:5-15, April 29, 2025. Ms. Smith's testimony at trial, together with the letters submitted contemporaneously with this filing, show that she now understands the full nature and seriousness of the abuse of her elected position and that she accepted responsibility for her actions as soon as practicable. That said, the fact that she clearly did not understand that her actions, while

---

[1] While Ms. Smith's quick and fulsome acceptance of responsibility and testimony related thereto is detailed in this section related to the nature and circumstances of the offense, it additionally relates to the Court's evaluation of Ms. Smith's character related to her history and characteristics, and Ms. Smith submits that the Court should consider this testimony when considering the § 3553(a) factors as a whole.

unethical, were criminal while she undertook them is a factor that the Court should weigh heavily when evaluating the nature and circumstances of the offense.

### C. The History and Characteristics of Ms. Smith

Ms. Smith has no previous criminal history. Her actions are inconsistent with her lifetime dedication to helping others both within the State of Tennessee and in her community more specifically. Attached as Collective Exhibit 1 to this memorandum are 30 letters from Ms. Smith's family, church leaders, and colleagues demonstrating Ms. Smith to be a caring mother, daughter, volunteer, and community member. The letters all speak to Ms. Smith's longstanding and continuing contributions and commitment to her community, as well as to her family and friends. They also exhibit that Ms. Smith has accepted responsibility fully, including resigning her elected position immediately upon pleading guilty, as well as the fact that she has shown a commitment to improving and growing from the mistakes that led her to this place. The letters from Ms. Smith's family, including her two children and husband specifically, additionally demonstrate that Ms. Smith has shown remorse and regret for the mistakes she has made.

As demonstrated in the letters, over the past few years since resigning her position, Ms. Smith has written articles for the Chattanooga News Chronicle; worked as a volunteer to professionals and coordinating skills trainings and activities for large groups of middle school and high schoolers; worked as a mentor to children, as she had prior to the events of this case; continued to teach Sunday school, as she had for years prior to the events of the case; assisted in taking care of her grandchildren; and after having volunteered with the organization for over five years since 2020, quietly accepted the position as Chairman of the Board with Transform Ministries, which provides services to current prison and jail inmates and former inmates as well as prevention services at-risk youth in southeast Tennessee and northwest Georgia.

Unlike some defendants, who change their ways only after having been confronted with the reality of their situations, as exhibited in the letters, Ms. Smith has been teaching Bible study for 35 years and has served as a volunteer with countless local organizations since long before she was aware of the criminal investigation in 2021. Additionally, a letter from Clay Ingle, Chief of the Hamilton County Special Tactics and Rescue Service, describes how Ms. Smith assisted the service with applying for and obtaining grants to obtain a command truck that has been invaluable in saving the lives of lost children in the Chattanooga area, and a letter from Monty Reeves, Director of Friends House Ministries, Inc., a sober living house in Chattanooga, describes Ms. Smith's volunteer efforts to help Friends House obtain grants and other recognition to assist those who are struggling with addiction. Ms. Smith uses her skills to help those who need assistance in her community, as she always has.

In addition, Ms. Smith is the primary caregiver for her mother, Shirley Tucker, who is 83 years old and lives in close proximity to Ms. Smith. Ms. Smith manages her mother's affairs and takes her, a cancer survivor currently undergoing treatment for a tumor and showing early signs of dementia, to her medical appointments and to church. As her mother, Shirley Tucker, wrote: "Since Robin resigned and pled guilty three and a half years ago, her heart has never waivered (sic), just as she did during the illness and death of Robert, my husband and her Dad, Robin became stronger, served even more, and used trough times to be better." Ms. Smith currently works as Director of Curriculum at her church in Hixon Tennessee, Abba's House, and is the lead writer on staff at Ronnie Phillips Ministries International. She is working each day to continue her life of service and make a positive impact in the world well outside of the realm of politics, which led her to this point.

9

In addition to the extraordinary efforts to accept responsibility for and make right her actions, Ms. Smith's character and life-long commitment to service for those more vulnerable in the community, as well as her mother's need to have her present as a daily caregiver, further justify a downward variation to one year of probation.

**D. The Need for Sentence to Reflect the Seriousness of the Case, to Promote Respect for the Law, to Provide Just Punishment for the Offense, to Provide Adequate Deterrence, and to Protect the Public**

The arrest, prosecution, and conviction of a former elected state representative, which have already taken place, sent a clear message to current public officials regarding the use of one's position and influence to obtain state funds. The various punishments the Court has and will levy on Ms. Smith (and that she has levied on herself), specifically forfeiture, one year of probation, and resignation of her elected position, will promote respect for the law, are just, and will provide general deterrence for future bad actors in the public sphere. Ms. Smith's co-conspirators, who did not plead guilty, cooperate, or ever accept responsibility for their actions, and who additionally were convicted of money laundering violations, were sentenced to 30 months' imprisonment and 36 months' imprisonment, respectively. Sentencing Ms. Smith, who, in comparison, accepted responsibility very quickly after having learned of the nature of the crime, to a term of probation, will, together with the prison sentences of her co-conspirators, provide ample general deterrence to public officials or those working with them from committing similar crimes in the future. Doing so will send a clear message to future would-be bad actors that, in the event that they do make the grave mistake of committing honest services fraud, they should step forward, acknowledge their crimes, and assist authorities in bringing the matter to justice. Such a message will only be sent if Ms. Smith's sentence reflects that accepting responsibility results in substantial credit, and a sentence of probation will send that message effectively.

Additionally, given that Ms. Smith voluntarily resigned her position with the State House and will no longer pursue any career in or around politics, she presents virtually no risk of reoffending, and nothing suggests that the public needs protection from Ms. Smith. Ms. Smith has also already reached a statistically advanced age. As such, specific deterrence is largely irrelevant here.

### E. The Need to Avoid Unwarranted Sentencing Disparities

"[S]entencing data released by the Sentencing Commission should serve as 'a starting point for district judges' to avoid unwarranted sentence disparities." *United States v. Perez-Rodriguez*, 960 F.3d 748, 756 (6th Cir. 2020) (quoting *United States v. Stock*, 685 F.3d 621, 629 n.6 (6th Cir. 2012)). Data released by the Judiciary Sentencing Information system shows that 14% of defendants sentenced under § 2C1.1 with a Final Offense Level of 21 and a Criminal History Category of I received a sentence of probation or a fine only, after excluding defendants who, like Ms. Smith, received a § 5K1.1 substantial assistance departure. UNITED STATES SENTENCING COMMISSION JUDICIARY SENTENCING INFORMATION (JSIN), https://jsin.ussc.gov/analytics/saw.dll?Dashboard (last visited Oct. 14, 2025). The data also shows that 50% of defendants under § 2C1.1 with a Final Offense Level of 21 and a Criminal History Category of I received a downward departure or variance, 30% received a § 5K1.1 substantial assistance departure, and no defendants received an upward departure or variance. *Id.* A sentence of one year of probation without a period of home detention would thus help "avoid unwarranted sentence disparities" in this case.

With respect to the imposition of a fine, Ms. Smith requests that the Court note that, while individual financial circumstances may vary, the Court imposed a fine of $25,000 on Mr. Cothren

11
Case 3:22-cr-00078    Document 40    Filed 10/21/25    Page 11 of 13 PageID #: 165

and $30,000 on Mr. Casada, neither of whom accepted responsibility or cooperated with the government, and both of whom were convicted of money laundering violations.

**F. The Need to Provide Restitution to Victims**

While the State of Tennessee was identified in the PSR as a victim, the government advised, as reflected in the PSR, that there is no restitution owed in this case. PSR ¶ 139. Moreover, as stated above, Ms. Smith has already satisfied her forfeiture obligation in the amount of $28,263.26. D.E. 34.

### III. CONCLUSION

For the reasons set forth above, the nature and circumstances of this case warrant a downward variance from the sentencing guidelines. Ms. Smith has no prior criminal history, has accepted full responsibility for her actions, has done everything she could to cooperate with the government since coming to a full understanding of the criminal nature of her actions, and has already forfeited the $28,263.26 she received in profit. In addition, Ms. Smith voluntarily resigned her position in the Tennessee House of Representatives and is a caring family and community member who has worked hard to rectify her conduct. Given Ms. Smith's efforts to accept responsibility to the full extent and other mitigating factors, the Court should grant Ms. Smith a downward variance to a sentence of one year of probation with no period of home detention, no special conditions, and no fine.

DATED: October 21, 2025         Respectfully submitted,

**HOLLAND & KNIGHT LLP**

/s/ L. Wells Trompeter
L. Wells Trompeter (TN BPR #030380)
HOLLAND & KNIGHT LLP
511 Union Street, Suite 2700
Nashville, TN 37219
Telephone: (615) 244-6804
wells.trompeter@hklaw.com

W. David Bridgers (TN BPR # 016603)
WADDEY ACHESON
1030 16th Avenue S
Nashville, TN 37212
Telephone: (629) 395-1361
david@waddeyacheson.com

Benjamin M. Rose (TN BPR # 021254)
ROSEFIRM, PLLC
Two Maryland Farms, Suite 2-126
Brentwood, TN 37027
Telephone: (615) 942-8295
ben@rosefirm.com

*Attorneys for Defendant Robin Smith*

### CERTIFICATE OF SERVICE

I hereby certify that on October 21, 2025, I served counsel for the government by filing the Sentencing Memorandum with the Clerk of the Court using the CM/ECF system.

/s/ L. Wells Trompeter
L. Wells Trompeter